UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THORNTON-BURNS OWNERS
CORPORATION,

                    Plaintiffs,

       -against-

ERWIN NAVAS and MAYRA NAVAS
(a/k/a MAYRA RIVAS),

                 Defendants.

-----------------------------------------------------------------x
ERWIN NAVAS and MAYRA NAVAS
(a/k/a MAYRA RIVAS),

           Counter-Claim Plaintiffs,

       -against-

UNITED STATES, *et al.*,

           Counter-Claim Defendants,
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CV-4241 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

      Third-party Plaintiffs, Erwin Navas and Mayra Navas (the "Navases"), move to remand this case to State court on the ground that Cross-claim Defendant Stephanie Kitson ("Kitson"), a United States Postal Service ("USPS") letter carrier who served the Navases' apartment building (the "Co-op"), was acting outside the scope of her employment when she allegedly engaged in a conspiracy with the Co-op board to harass the Navases and interfere with the delivery of their mail. (Dkt. 6.) The Navases also move for reconsideration of this Court's denial, by Order dated March 3, 2014, of their motion for an extension of time to file a reply in support of their motion to remand. (Dkt. 34.)

Because the United States properly notified the Navases of the removal of this action, and because Kitson was acting within the scope of her employment under 28 U.S.C. § 2679 and § 28 U.S.C. 1442, the Navases' motion to remand is DENIED.  Moreover, because their request for an extension of time is futile, the Navases' motion for reconsideration is also DENIED.

## BACKGROUND

The Court recites only the background relevant to the resolution of this motion.

Housing Co-operative corporation Thornton Burns Owners Corp. ("Thornton Burns") commenced this action on August 2, 2011, in the Supreme Court of the State of New York, County of Queens ("Queens County Supreme Court"), against the Navases, who are shareholders and residents of the Co-op.  (Dkt. 7 at pp. 25-35 ("TB Compl").)  The complaint alleged, *inter alia*, that the Navases harassed and threatened other shareholders, the Co-op board, building staff and the management agent.  (TB Compl. ¶ 5.)  On September 9, 2011, the Navases filed an Answer with Counterclaims against Thornton Burns and all of the individuals who signed affidavits in support of Thornton Burns' Complaint.  (Dkt. 7 at pp. 73-105 ("Navas Compl.").)  The Navases also asserted claims against Kitson because she allegedly conspired with the Co-op, and "intentionally destroyed and/or failed to deliver mail that was intended for [the Navases]" and filed "false police reports" against Ms. Navas in furtherance of the conspiracy.  (Dkt. 7 at pg. 84 ¶ 43(f)(g)).  The Navases accused Kitson of committing a variety of torts and playing a key role in an alleged RICO conspiracy, in violation of 18 U.S.C. § 1961, *et seq*.  (*Id.* at ¶¶ 43(f)(g), 46-55.)

On July 26, 2013, the United States, on behalf of Kitson, removed the case to this Court because Kitson "was acting within the scope of her employment with the United States of America . . . at all times pertinent to the incidents alleged in Plaintiffs' Counterclaim."  (Dkt. 1 ¶

4.) Kitson has denied any involvement in the alleged conspiracy with the Co-op board to harass the Navases or interfere with their mail in any way. (Dkt. 28-1 ("Kitson Decl.") ¶ 19.)[1]

On August 26, 2013, the Navases moved to remand this action to Queens County Supreme Court. (Dkt. 6.) That motion is before the Court.

## DISCUSSION

### I. Removal Pursuant to 28 U.S.C. § 2679

Kitson asserts that this case was properly removed to federal court under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), pursuant to 28 U.S.C. § 2679(d)(2). In addition, Kitson claims that, pursuant to 28 U.S.C. § 2679(d), this action should be deemed to have been brought against the United States, and the United States should be substituted for Kitson.

"The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees, including Postal Service employees, within the scope of their employment." *Mathirampuzha v. Potter,* 548 F.3d 70, 80 (2d Cir. 2008) (citing *Dolan v. U.S. Postal Serv.,* 546 U.S. 481, 484-85); *see also Rodriguez v. United States,* 01-CV-4975, 2001 WL 1590516, at *2 (E.D.N.Y. Nov. 3, 2001) (noting that the FTCA "provides the *exclusive* remedy for torts committed by federal employees in the course of their duties" (emphasis in original)). "Thus, by way of the FTCA, the United States has provided a limited waiver of its sovereign immunity for specified tort cases, with exclusive jurisdiction over these cases in the federal courts." *De Masi v. Schumer*, 608 F. Supp. 2d 516, 520 (S.D.N.Y. 2009) (alteration omitted)

---

[1]  In 2011, Kitson filed a complaint with the New York City Police Department based on what she alleges was Ms. Navas' repeated threatening and harassing conduct, and notified her supervisors at the USPS of Ms. Navas' conduct. (Kitson Decl. ¶¶ 7 -15; Dkt. 28-2 ("Arnovici Decl.") ¶ 8.) On August 18, 2011 and March 12, 2012, Kitson signed Supporting Depositions that were provided to the Queens County District Attorney's Office, and have resulted in a pending criminal case in Queens County Criminal Court. (Kitson Decl. ¶¶ 14-16, Ex. B, C, D.)

(quoting *Delgado v. Our Lady of Mercy Med. Ctr.,* 06–CV–5261, 2007 WL 2994446, at *4 (S.D.N.Y. Oct. 12, 2007)).

The Federal Employees Liability Reform and Tort Compensation Act of 1988, or the "Westfall Act," provides federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties. *See Osborn v. Haley*, 549 U.S. 225, 229 (2007); 28 U.S.C. § 2679(b)(1). This principle also applies to "an employee on duty at the time and place" an incident allegedly occurred, but who denies that the incident took place. *Osborn*, 549 U.S. at 247.

In such situations, the Westfall Act authorizes the Attorney General, or the United States Attorney in the district in which the suit is brought, to certify that the defendant was acting within the scope of her employment with respect to the conduct alleged by the plaintiff. 28 U.S.C. § 2679(b)(1); 28 C.F.R. § 15.4; *see also, e.g., De Masi*, 608 F. Supp. 2d at 520-21. Thereafter, the action "shall be deemed to be an action or proceeding brought against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). "[O]nce certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court." *Id.* at 231. However, courts may still review a scope-of-employment certification for the purposes of substitution. *See Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 424-25 (1995). But courts review such certifications only if a plaintiff "allege[s] with particularity facts relevant to the scope-of-employment issue." *McHugh v. Univ. of Vermont,* 966 F.2d 67, 74 (2d Cir. 1992), *overruled on other grounds by Osborn,* 549 U.S. at 247. The moving party "bears[s] the burden of showing that the certification was improper." *Lipkin v. U.S. Sec. & Exch. Comm.,* 468 F.Supp.2d 614, 623 (S.D.N.Y. 2006).

Here, there is no dispute that Kitson is a federal employee against whom the Navases have asserted tort claims. On July 26, 2013, the United States Attorney for the Eastern District of New York certified that Kitson was acting within the scope of her duties as a Federal employee at all times relevant to this litigation. (Dkt. 1, Ex. B.) This case is, therefore, properly before this Court.

The Navases allege, however, that the United States cannot properly be substituted for Kitson because she was not acting within the scope of employment at the time of the alleged incident. (*See* Dkt. 7 pp. 1-21 ("Navas Aff.") at ¶ 39.) When a party challenges a scope-of-employment certification, a district court reviews the certification *de novo. McHugh*, 966 F.2d at 72. In conducting its review, the court applies state law principles to determine when tortious conduct falls within the scope of a party's employment. *See McHugh,* 966 F.2d at 75.

New York law holds that an employee's tortious acts fall within the scope of his employment if "done while the servant was doing his masters work, no matter how irregularly, or with what disregard of instructions." *Pizzuto v. County of Nassau,* 239 F.Supp.2d 301, 313 (E.D.N.Y. 2003) (quoting *Riviello v. Waldron,* 47 N.Y.2d 297, 391 N.E.2d 1278, 1281 (1979)) (internal quotation marks omitted). The following factors are weighed by courts in making such a determination: (1) whether the time, place and occasion for the act was connected to the employment; (2) the history of the employer-employee relationship in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent to which the act departs from normal methods of performance; and (5) whether the act was one that the employer could reasonably have anticipated. *See, e.g., Pizzuto,* 239 F.Supp.2d at 313 (citing *Riviello,* 391 N.E.2d at 1278).

These factors overwhelmingly indicate that the acts attributed to Kitson in the Navases'
complaint occurred with the scope of her employment. The crux of the Navases' complaint, as
far as the Court can tell, is that Kitson was central to a conspiracy to evict the Navases from the
Co-op—a goal which Kitson allegedly advanced by failing to deliver to the Navases their mail
containing "various important legal documents." (Navas Aff. ¶ 20.) The delivery of mail is,
perhaps as much as any single task can be associated with a profession, precisely within a letter
carrier's scope of employment. The reports Kitson made to the police were likewise within the
scope of her employment, if less obviously so. Kitson's interactions with Ms. Navas were
occasioned solely by her duties as a letter carrier. Furthermore, the United States has put forth
evidence that the USPS requires letter carriers to report threats of violence and stalking when
they are confronted with such conduct. (*See, e.g.,* Aronovici Decl. ¶¶ 10, 12, Ex. B.) The
remainder of the Navases' allegations, to the extent they allege Kitson acted outside the scope of
her employment, are not pled with sufficient particularity to enable meaningful review of the
United States' substitution for Kitson.[2] *See McHugh,* 966 F.2d at 74.

As a result, the Court finds that Kitson was acting within the scope of her employment as
a USPS letter carrier in connection with the Navases' claims of wrongdoing by Kitson and,
accordingly, certification was proper pursuant to 28 U.S.C. § 2679(d)(2). Because the United
States of America has satisfied the requirements of 28 U.S.C. § 2679(d)(2), the Court finds that

---

[2]    Even were the Navases' allegations pled with sufficient particularity, the Court would
adopt, in general, Kitson's argument that an analysis of the five relevant factors demonstrates
that she was acting within the scope of her employment. (*See* Dkt. 28 at 14-19.)

removal was proper. Accordingly, the United States is substituted for Kitson as cross-claim defendant in this action. *See Osborn,* 549 U.S. at 230.[3]

## II.    Removal Pursuant to 28 U.S.C. § 1442

Kitson also argues that removal pursuant to 28 U.S.C. § 1442 is proper because she was acting within the scope of her employment as a federal officer throughout the course of the alleged misconduct. Where a federal employee acts within the scope of her employment, removal is proper pursuant to 28 U.S.C. § 1442(a)(1). Sections 1442(a)(1) is a "separate and alternative" basis for removal from § 2679(d), discussed above, "both of which authorize removal of cases to federal court." *De Masi*, 608 F. Supp. 2d at 523 (citations and quotation marks omitted).

The Federal Officer Removal Statute allows federal officers to remove actions to federal court "despite the nonfederal cast of the complaint" because "the federal-question element is met if the *defense* depends on federal law." *Jefferson Cnty., Ala. v. Acker,* 527 U.S. 423, 431 (1999) (emphasis added) (noting that the Federal Officer Removal Statute is an exception to the general rule that a federal defense does not qualify a case for removal). At the removal stage, the federal official need only raise a plausible federal defense and allege that she was acting under color of her office. *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). To demonstrate that she was acting under color of her office, a federal official "must show a nexus, a causal connection between the charged conduct and asserted official authority." *Jefferson Cnty., Ala.*, 527 U.S. at 431 (citations and quotation marks omitted). The Federal Officer Removal Statute is to be liberally construed in favor of removal to federal court. *See Willingham*, 395 U.S. at 406-07.

---

[3]    Notwithstanding the substitution, the Court will continue to refer to Kitson by name, rather than the "United States," for the remainder of this Memorandum & Order to avoid confusion or ambiguity with respect to the underlying facts of this case.

Here, Kitson has alleged that she was acting under the color of her office as a USPS letter carrier at all relevant times by attempting to deliver mail at the Co-op and by taking actions, such as reporting Ms. Navas' harassing conduct to law enforcement, to protect her own safety and allow her to perform her occupational duties. (Kitson Decl. ¶¶ 3, 4, 5, 11, 12, 14, 17-20.) At this stage, Kitson has met her burden of pleading a plausible defense, namely that any action she took was in furtherance of fulfilling the requirements of her job—safe and effective delivery of the mail—which in this case are mandates of federal law. *See e.g.*, 39 U.S.C. § 403(b) ("It shall be the responsibility of the Postal Service . . . to maintain an efficient system of collection, sorting, and delivery of the mail nationwide"). Moreover, there are specific federal defenses available to Kitson, or the United States as substituted for Kitson, under the FTCA. *See e.g.,* 28 U.S.C. § 2680(b) (preserving sovereign immunity for claims arising out of the transmission of post mail); 28 U.S.C. § 2680(h) (barring certain claims under the FTCA's "intentional tort exception").

The nexus and causal connection between Kitson's duties and the events alleged in the Navases' complaint are clear. The Navases' primary allegation is that Kitson failed to deliver mail as part of conspiracy. In any event, Kitson would not have had the occasion to interact with the Navases but for her assignment to deliver mail to the Co-op.

The Court finds that removal of this case to federal court is proper under 28 U.S.C. § 1442(a)(1).[4] The Navases' motion to remand is denied, in addition, on this basis.

---

[4] Citing to the general removal statute, 28 U.S.C. § 1441, the Navases contend that removal is not authorized where the removing party is a cross-claim defendant. (Navas Aff. ¶¶70-78.) This argument is inapposite. Here, removal is being effected under 28 U.S.C. § 1442(a), where a civil claim is made against the United States, its agencies, or it employees "for or relating to any act under color of such office." "[C]ourts have uniformly permitted third-party defendants to remove under Section 1442(a)(1)," as opposed to Section 1441, because Section 1442 "rests upon far stronger considerations of policy." *Moreland v. Van Buren GMC*, 93 F. Supp. 2d 346, 350 (E.D.N.Y. 1999) (quoting *Bradford v. Harding,* 284 F.2d 307, 310 (2d Cir. 1960) (additional citations and quotation marks omitted)).

### III.  **Notification of Removal**

The Navases also contend that removal was improper because they were not properly notified of the removal of this action from state court to this Court.  This argument is without merit.

Under both 28 U.S. C. § 2679(d)(2) and 28 U.S.C. § 1442(a), removal may be initiated by the government any time prior to trial.  The removing party is required, pursuant to 28 U.S.C. § 1446(a), to file a notice of removal in the relevant district court.  That party shall then "promptly" "give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court." 28 U.S.C. § 1446(d).  However, procedural defects in notice to an adverse party do not defeat removal, particularly where the adverse party was aware of the action and does not demonstrate any prejudice resulting from the delay.  *See, e.g., Gomes v. ANGOP, Angola Press Agency*, 11-CV-0580, 2012 WL 3637453, *5 (E.D.N.Y. Aug. 22, 2012), *aff'd sub nom., Gomes v. ANGOP*, 541 F. App'x 141 (2d Cir. 2013).

Here, the Navases' claim that they were not given written notice of the removal, but only learned of the removal from a third party at some unspecified time.  (Navas Aff. ¶¶ 35-38.) Whether or not the Navases received timely notice is irrelevant because they have not alleged any resultant prejudice.  Indeed, they filed their motion to remand on August 23, 2013 (Dkt. 6.), less than a month after Notice of Removal was filed with this Court, on July 26, 2013.  (Dkt. 1.) Because the Navases had timely notice of the removal, whether constructive or actual, and have not been prejudiced in any discernible way in this action, their motion to remand on this ground is denied.  *See, e.g., Gomes*, 2012 WL at *5.

## IV.    Request for Reconsideration

The Court held a status conference in this case on November 5, 2013 to discuss several issues, including the Navases' previously filed motion to remand.  At the conference, the Court ordered the Government's opposition brief due on January 6, 2014, and the Navases' reply due on February 6, 2014.  (*See* ECF Minute Order dated 11/05/2013.)  On February 28, 2014, three weeks after the reply brief was due, the Navases requested an extension of time to file their reply.  The Court denied the request as untimely.  (*See* ECF Order dated 03/03/2014.)  Further, the Navases neither established good cause for their failure to file a timely reply in support of their motion to remand, nor filed a timely request for an extension before the due date for their reply.  The Navases moved for reconsideration.  (Dkt. 34.)  The Court denies that motion because, *inter alia*, submission of a reply brief, as discussed above, is—and would have been—futile.

As part of their motion for an extension, the Navases also request that this action be stayed because Ms. Navas is the subject of the related criminal case in Queens County.  (Dkt. 31.)  Trial in that case was scheduled for March 12, 2014.  The Navases have provided no documentation demonstrating that the criminal trial is a continuing obstacle in their pursuit of this litigation.  Furthermore, even if Ms. Navas's criminal case is still pending, the Navases have failed to explain why the pendency of the criminal matter justifies a stay in this civil action, which the Navases initiated, at least at this stage of the proceedings.  The Navases' request for a stay is therefore denied.

## CONCLUSION

For the reasons set forth above, the Navases' motion to remand this case to State court is DENIED.  The Navases' motion for reconsideration of this Court's denial of their motion for an

extension of time to file a reply brief pertaining to this motion is also DENIED. Finally, the Navases' motion to stay this case is DENIED. The Clerk of the Court is respectfully directed to terminate the motions at docket entries [6] and [34].

Pursuant to this Court's February 25, 2014 Order, the United States and Thornton Burns may file their proposed motions to dismiss within 30 days from the date of this Order, *i.e.*, by May 8, 2014. The Navases shall file their response by June 9, 2014. Replies, if any, shall be filed by June 23, 2014.

SO ORDERED:


 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: April 8, 2014
        Brooklyn, New York